JDM 12.11.23
HG/SVW: USAO#2023R00792

FILED ___ ENTERED
LOGGED ___ RECEIVED

JAN 23 2024

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. MJM 24cr 15 |
| v. | (Conspiracy To Commit Money Laundering, 18 U.S.C. § 1956(h); Forfeiture, 18 U.S.C. § 982(a)(1), 21 U.S.C. § 853(p)) |
| DANIEL BOBBY TRUMP, a/k/a "Daniel Amaano Ofei," a/k/a "Daniel Bobby Gold," | |
| | UNDER SEAL |
| Defendant. | |

...oOo...

## INDICTMENT

### COUNT ONE – CONSPIRACY TO COMMIT MONEY LAUNDERING

The Grand Jury for the District of Maryland charges:

### INTRODUCTION

At times material to this Indictment:

1. Defendant **DANIEL BOBBY TRUMP, a/k/a "Daniel Amaano Ofei," a/k/a "Daniel Bobby Gold,"** lived in Maryland.

2. FATOUMATA BOIRO ("BOIRO"), MARTIN OGISI ("OGISI"), and YAHYA SOWE ("SOWE") also lived in Maryland.

3. Victim Larimer County, Colorado ("Larimer County") was a northern county in Colorado with a population of approximately 350,000 people.

4. In or about April 2022, Larimer County sought to pay a contracting company in connection with the repair of a portion of a county road.

1

5. Citibank, N.A. ("Citi"), Fulton Bank ("Fulton"), Navy Federal Credit Union ("NFCU"), PNC Bank ("PNC"), and Truist Bank ("Truist") were financial institutions as defined in 18 U.S.C. § 20, and had physical branches, ATMs, teller windows, and employees within Maryland. All of these entities are hereinafter collectively referred to as the "Financial Institutions."

6. The Financial Institutions maintained records concerning financial transactions in their accounts, including but not limited to records about the individuals controlling the accounts, and in some instances, surveillance video and/or images, and information about the identification documents used to open accounts.

7. Financial institutions throughout the United States used a nine-digit number called a routing number along with a bank account number to determine the particular financial institution and account that should receive funds from a wire transfer. Similarly, financial institutions placed the routing number and account number on checks so that a bank receiving a check deposit could draw on the funds and account from which the check was issued.

## THE CONSPIRACY

8. Beginning at least in or around March 2022, and continuing through in or about July 2022, in the District of Maryland, and elsewhere,

> **DANIEL BOBBY TRUMP,**
> a/k/a "Daniel Amaano Ofei,"
> a/k/a "Daniel Bobby Gold,"

the defendant herein, did knowingly combine, conspire, agree with BOIRO, OGISI, and SOWE, and other persons known and unknown to the grand jury, to commit an offense against the United States, namely,

    a.    to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, with the intent to promote the carrying on of such specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

    b.    to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## PURPOSE OF THE CONSPIRACY

9.    It was a purpose of the conspiracy for the **DEFENDANT** and his co-conspirators to unlawfully enrich themselves and others by engaging in financial transactions to promote a wire fraud scheme and conceal wire fraud proceeds.

## MANNER AND MEANS

10. It was part of the conspiracy that the **DEFENDANT** and his co-conspirators created and used limited liability companies and other business entities (collectively "Business Entities") that often did not have significant physical operations, business premises, gross revenues, cost of goods sold, and reported wages for employees.

11. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators opened and controlled bank accounts on which the Business Entities were listed as the account holders, and members of the conspiracy had signature authority over the bank accounts.

12. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators registered, created, used, and controlled the following Business Entities:

     a. Bobby Trump Access Group, which **TRUMP** controlled;

     b. FB Morgan LLC, which BOIRO controlled; and

     c. Smart Logistics LLC, which OGISI controlled.

13. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators registered and used bank accounts listed in their own names and those of their co-conspirators.

14. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators used the bank accounts that they controlled to receive money originating with Larimer County.

15. It was further part of the conspiracy that Larimer County was deceived into sending money to PNC 9062 based on false and fraudulent pretenses, including being provided

with false bank account information for a Larimer County payment intended to pay a legitimate contracting company for road repairs.

16. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators caused fraud proceeds to flow through at least the following bank accounts (ending with the four numbers shown):

    a) Fulton 1499, which **TRUMP** controlled;

    b) PNC 9062, which **TRUMP** controlled;

    c) NFCU 7472, which **TRUMP** controlled.

    d) Citi 2947, which BOIRO controlled;

    e) BOA 5930, which OGISI controlled; and

    f) Truist 9334, which SOWE controlled.

17. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators promoted the wire fraud scheme by causing additional financial transactions using the wire fraud proceeds deposited into the bank accounts listed in the names of the Business Entities, **DEFENDANTS,** and their co-conspirators.

18. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators concealed and disguised the wire fraud proceeds by causing additional financial transactions with the wire fraud proceeds.

19. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators caused wire fraud proceeds to be credited to additional bank accounts registered to the Business Entities and controlled by the **DEFENDANT** and his co-conspirators.

20. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators concealed and disguised the nature, location, source, ownership, and control of the proceeds by withdrawing, spending, and transferring money from the Business Entities' bank accounts in the form of cash withdrawals, the purchase of cashier's checks, debit card transactions, and other financial transactions.

21. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators communicated through encrypted online communication applications.

22. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators obtained and used a portion of the money deposited into the Business Entities' bank accounts controlled by the **DEFENDANT** and his co-conspirators.

23. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators engaged in international financial transactions and caused wire fraud proceeds to be sent outside the United States.

24. It was further part of the conspiracy that the **DEFENDANT** and his co-conspirators collectively conducted and attempted to conduct financial transactions involving more than $550,000, knowing that the transactions constituted proceeds from unlawful activity.

18 U.S.C. § 1956(h)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982(a)(1) and (b)(1) and 21 U.S.C. § 853(p) in the event of the defendant's conviction under Count One of this Indictment.

### Money Laundering Forfeiture

2. Upon conviction of the offense alleged in Count One of this Indictment, the defendant,

**DANIEL BOBBY TRUMP,**
a/k/a "Daniel Amaano Ofei,"
a/k/a "Daniel Bobby Gold,"

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offenses, or any property traceable to such property, including a money judgment in the amount of funds involved in the money laundering.

### Substitute Assets

3. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided

without difficulty, the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C § 982(b)(1).

18 U.S.C. § 982(a)(1) and (b)(1)
21 U.S.C. § 853(p)

*Erek L. Barron / lmy*
EREK L. BARRON
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**   Date: 1/23/24
Foreperson

8